**SISTERS OF ST. MARY, et al.,**
**Plaintiff-Respondent,**

v.

**Gerald O. DENNIGMANN and Joy Dennigmann, Defendant-Appellant.**

No. 52379.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 12, 1987.

Jeffrey S. Hebrank, Highland, for defendant-appellant.

Gerald J. Bamberger, St. Charles, Jill R. Hummel, St. Louis, for plaintiff-respondent.

KAROHL, Judge.

On December 5, 1984, plaintiff hospital sued patient Gerald O. Dennigmann on account for medical services rendered between February 21, 1982 and March 4, 1982. On January 25, 1985, Gerald filed a

counterclaim alleging medical malpractice on the part of plaintiff hospital for failure of plaintiff's emergency room medical staff to properly diagnose an appendicitis problem. Plaintiff asserted the statute of limitations, § 516.105 RSMo 1978, as a ground for summary judgment on Gerald's counterclaim. On that ground the trial court sustained plaintiff's motion for summary judgment. Plaintiff subsequently filed a first amended petition against defendants Gerald O. Dennigmann and Joy Dennigmann, his wife, asserting that they expressly agreed in writing to pay for the medical services. Defendants filed answers in the form of a general denial without requesting a set-off on the basis of deficient medical services. After the parties waived a jury the court entered judgment in favor of the hospital and against both defendants in the amount of $4,209.65 plus court costs. Defendant Gerald O. Dennigmann appeals the summary judgment in favor of the hospital on his counterclaim and both defendants appeal judgment in favor of plaintiff hospital on its petition founded in contract.

We first consider the appeal of both defendants from the judgment for plaintiff hospital on its petition. They claim only one error of the trial court; it erred in entering judgment in favor of the hospital on the suit for collection of the unpaid medical bill because defendants were prejudiced in their defense of the collection action, by the prior order of summary judgment, which effectively precluded affirmative defenses of fraud and misrepresentation. This assertion is easily disposed of because it is factually incorrect. The summary judgment in favor of the hospital and against defendant Gerald O Dennigmann on his counterclaim was based entirely on the statute of limitations defense to a medical malpractice claim. It did not foreclose or prevent defendants from raising or presenting a recoupment or set-off on the basis that the services were deficient or defective. *State ex rel. Sisters of St. Mary v. Campbell,* 511 S.W.2d 141, 150 (Mo.App. 1974). Further, we find that the trial court did not err in granting plaintiff's motion for summary judgment.

The counterclaim of Gerald O. Dennigmann proceeds on the theory that plaintiff hospital was guilty of medical malpractice and was negligent on various grounds including failure to have competent emergency room doctors and nurses capable of making a proper diagnosis in a clinical setting for appendicitis problems. Defendant Gerald O. Dennigmann also alleges the hospital had actual knowledge of this negligence and the resulting injury, but undertook a course of post-operative conduct which was intended to misrepresent and mislead defendant into believing that a compromise or settlement of the medical charges would be reached by the parties. For that reason defendant Gerald O. Dennigmann claims that the statute of limitations was tolled on the authority of § 516.-280, RSMo 1978. In the alternative defendant Gerald O. Dennigmann claims that the doctrine of equitable estoppel recognized in *Sugent v. Arnold's Estate,* 101 S.W.2d 715 (Mo.1937), should be applied so as to foreclose the defense of statute of limitations. Finally, defendant Gerald O. Dennigmann claims that the defense of statute of limitations should be unavailable to plaintiff hospital as a matter of public policy.

Summary judgment may be granted only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. Rule 74.04(c). The statute of limitations for a medical malpractice claim begins to run from the date of the complained negligence. Section 516.105 RSMo 1978. However, "[i]f any person, by absconding or concealing himself, *or by any other improper act,* prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such actions shall have ceased to be so prevented." Section 516.-280 RSMo 1978. (emphasis ours)

There is no dispute that all medical services which are the subject of this litigation were rendered by March 4, 1982, and that the counterclaim for medical malpractice was filed on January 25, 1985. The claim

is barred unless the statute was tolled by improper acts as that term is used in § 516.280, RSMo 1978.

The issue in this case is whether there remained any material issue of fact in dispute at the time of the award of summary judgment relating to communications between plaintiff hospital and defendant Gerald O. Dennigmann which constitute an improper act which prevented commencement of his claim within the two year period of the statute of limitations.

Section 516.280 RSMo 1978 and its predecessor statutes have been interpreted by the courts of this state. In 1914, the Missouri Supreme Court in *Davis v. Carp*, 258 Mo. 686, 167 S.W. 1042 (1914), referring to Rev.St.1909, § 1905, defined such improper act to be one in the nature of a fraud that would *prevent the commencement* of an action. The present counterclaim does not allege that the hospital "intended by [their] postoperative conduct and statements to conceal from [defendant] the fact that [he] had a claim against [plaintiff] for malpractice by reason thereof; ... that [plaintiff's] acts were fraudulent, and ... that [defendant was] not guilty of lack of diligence in not sooner ascertaining the truth with respect to the situation." *Brewington v. Raksakulthi*, 584 S.W.2d 112, 114 (Mo.App.1979). *See also, Sanders v. H. Nouri, M.D., Inc.*, 688 S.W.2d 24, 27 (Mo.App.1985).

We find that no acts of plaintiff hospital prevented commencement of defendant's action. Defendant Gerald O. Dennigmann was aware of the potential of the cause of action, but chose not to file suit within the limitation of the statute. *See, Klippel v. Watkins*, 667 S.W.2d 28, 31 (Mo.App.1984). Defendant Gerald O. Dennigmann was fully aware of his claim for malpractice and elected not to file the claim until after plaintiffs filed their petition of account. Mrs. Dennigmann acknowledged this choice in a letter to plaintiff in October, 1983, and said therein:

> *We do have grounds for a lawsuit,* but we do not believe in this sort of thing. Everyone in this country is eager to sue for anything that may arise. But we do believe the hospital could have discussed our bill with us and some kind of adjuctment. [sic] (emphasis ours)

Plaintiff hospital never acknowledged or admitted any acts of medical malpractice. Plaintiff's motion for summary judgment depends entirely on the admitted facts relating to the date of medical services and the date of filing of counterclaim. The hospital contends that "improper acts" referred to in § 516.280 RSMo 1978 require concealment of claimant's injury such that he is unaware of a cause of action, *Brewington v. Raksakulthi*, 584 S.W.2d 112 (Mo.App.1979) or acts which interfere with service of process, *Wheeler v. Missouri Pacific R.R. Co.*, 328 Mo. 888, 42 S.W.2d 579 (1931). We agree. However, no such acts are claimed or occurred in the present case. At most, defendant Gerald O. Dennigmann alleges that he was negotiating with plaintiff hospital on the amount of the medical bill. Defendant does not allege that the plaintiff hospital represented that it would compromise its bill if he would refrain from bringing a malpractice suit. The response of plaintiff to Mrs. Dennigmann's letter of October, 1983 is informative of the position of plaintiff. Therein it was said:

> Unfortunately, appendicitis can be very difficult to diagnose even by very experienced physicians. It is my understanding your husband's case was unusually difficult to diagnose. I am sure your husband did not want to be subjected to surgery until it was definitely determined this was necessary.

> It appears the hospitalization was absolutely necessary and, if this difficult case could have been diagnosed immediately, the hospital stay would have been at least eight days instead of eleven days. Therefore, we are willing to adjust the bill $400 per day for three days or $1200. We are willing to offer this with the understanding you agree to a minimum of $100 per month payment and the payments are consistently made.

The exchange of letters between Mrs. Dennigmann and plaintiff hospital was con-

sidered in the following inquiry in the deposition of Gerald O. Dennigmann:

Q. You didn't think it was satisfactory, but did anyone from St. Joseph Hospital ever tell you they ever considered lowering it any less than they did by this letter dated November 1, 1983?

A. Well, no.

\* \* \* \* \* \*

Q. But they never sent you a letter saying 'you are right. Therefore, you didn't have to pay?'

A. No, I don't think they did.

Q. It was your understanding that they expected you to pay even though you might not have been satisfied?

A. I suppose they did.

\* \* \* \* \* \*

Q. They never led you to believe they would reduce your bill more than $1200.

A. No. We left them agree that wasn't acceptable.

█ If a material issue of fact remained in dispute on plaintiff's motion for summary judgment it must be found in a counter affidavit filed by Joy Dennigmann. She there asserts that her husband was a patient in March, 1982; that she had conversations with plaintiff's hospital administrator and others about a misdiagnosis of her husband's condition and "they indicated that they would get back to us about what would be done about it all." She also asserts as a fact that she *believed* the hospital intended to compromise the bill for services rendered in exchange for our refraining from filing a medical malpractice action. There is no assertion in the affidavit that any factual basis for her belief was communicated by plaintiff hospital to either of the defendants. Accordingly, there was no dispute on the nature of any acts or representations made by the hospital which constitutes a "improper act" within the meaning of § 516.280 RSMo 1978. All that the hospital did was receive a request for a reduction of the bill and make an offer to do so. At the time the trial court considered the motion for summary judgment there were no summary judgment facts before the court to support a finding of any improper act "in the nature of a fraud that would prevent the commencement of the action." As a result, and as a matter of law, § 516.280 RSMo 1978 is of no benefit to defendants.

Defendant Gerald O. Dennigmann next contends, in the alternative, that the hospital should be equitably estopped from asserting the defense of statute of limitations. His reliance on *Sugent v. Arnold's Estate*, 340 Mo. 603, 101 S.W.2d 715, 718 (1937) is misplaced. *Sugent*, stands for the proposition that a defendant who has not expressly waived the defense of the statute of limitations may be estopped by his conduct from setting up the statute where, his conduct, though not fraudulent, has nevertheless induced the plaintiff to delay bringing suit until after the expiration of the statutory period. *Id.* at 718. *Sugent*, involved a suit against an estate to recover on a promissory note. The court affirmed a judgment in favor of the estate which defended on the basis of the statute of limitations. There was no communication between the decedent and the plaintiff who sued as the holder of the note after endorsement by the payee. The court concluded that any statements made to the original payee were not and could not be an inducement upon the holder to delay bringing suit on the note who had no knowledge of any statements made to the payee.

█ The facts in the present case indicate no communication from plaintiff hospital to either of the defendants which was an inducement to cause them to allow the statute of limitations on the medical malpractice claim to expire. A party cannot successfully assert the doctrine of equitable estoppel unless he proves through clear and convincing evidence the following three elements: (1) an admission, statement or act inconsistent with a claim afterwards asserted and sued upon; (2) action by the other party on the faith of such admission, statement or act; and, (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *See, Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 666 (Mo.1970). There was no material issue of fact in dispute regarding an admission,

statement or act of the hospital inconsistent with plaintiff's claim for payment or defendant's malpractice claim. We have already noted that defendants were fully informed on facts which would have supported a malpractice claim. There was no act by the defendants on the faith of any such admissions, statement or act relating to the intention of plaintiff not to collect the medical bill. There was an offer to compromise, but not to abandon plaintiff's claim for payment of the medical bill. There was no assertion of fact in opposition to the motion for summary judgment that plaintiff hospital would not attempt to collect the hospital bill, less an adjustment of $1200, or waive the statute of limitations. Defendants have preserved no summary judgment facts to support any allegation that the hospital was bargaining to prevent a malpractice claim. Finally, the tolling of the statute of limitations did not foreclose defendants from the opportunity to defend plaintiff's action to collect the medical bill on the basis of deficient or defective medical services which were the subject matter of the suit on account. The facts do not support qualification by defendants to rely on equitable estoppel.

■ Defendants urge a second reason to apply the doctrine of equitable estoppel. They rely on *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515 (Mo.App.1985) for the proposition that the court should intervene by way of equitable estoppel to prevent a gross injustice to a contracting party. By their argument they refrained from filing the medical malpractice action in reliance on the representations regarding negotiations or adjustments of the medical bill. Defendants misapprehend their relief. Even if they did not receive medical services commensurate with that which they were entitled to in the local area, they were not denied their day in court to defend themselves and to indicate that the prices charged for the services, as rendered, were subject to a set-off against the collection claim brought by the hospital. Defendants confuse their medical malpractice tort claim with a defense to the hospital's contract claim. In addition, there is no factual basis that if the hospital had reached a reasonable settlement on the medical bill, acceptable to the defendants, they would have been precluded from filing a medical malpractice claim. They failed to file the claim for personal reasons not in reliance on any negotiations of the medical malpractice claim. There were no such negotiations.

■ Next, defendants suggest to this court that as a matter of public policy it is grossly unjust for them to be precluded from filing a counterclaim for medical malpractice against the hospital. This issue was resolved to the contrary in *State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d 141 (Mo.App.1974). In *Campbell*, a hospital filed a counterclaim against a patient for unpaid medical bills after the expiration of the medical malpractice statute of limitations. The trial court refused to grant summary judgment. For two reasons we held the trial court exceeded its jurisdiction in applying principles of "fairness" to the question of law. First, the question of "fairness" is a matter of legislative discretion. Second, the statute did not prevent the patient from alleging in defense of the counterclaim recoupment in the hospital's collection action. *State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d at 150. The *Campbell* holding is decisive of the public policy issue asserted here.

We find that on undisputed facts the statute of limitations barred the counterclaim of defendant Gerald O. Dennigmann. The statute and the medical malpractice claim were not tolled by negotiations involving only the hospital's claim for payment of the bill for services. The trial court properly applied the statute and entered judgment for the plaintiff on the counterclaim. Accordingly, the judgment for plaintiff hospital on its suit to collect for medical services was not erroneously entered on the only claim of error asserted.

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.